**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | |
|---|---|
| KRISTEN E. BAKER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No.: 4:25-cv-00034 |
| ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |
| CITY OF LOUISIANA and ) | |
| ROBERT E. EMBLY, in his individual ) | |
| capacity ) | |
| ) | |
| ) | |
| Defendants. ) | |

Serve Defendant City of Louisiana at:

City of Louisiana
c/o Tim Carter
202 South 3rd St
Louisiana, MO 63353

Serve Robert E. Embly at:

Robert E. Embly
5021 Jack Daniels Rd
Hobbs, NM 88242

**COMPLAINT**

Plaintiff states:

**Venue, Jurisdiction, and Identity of Defendants**

1. All tortious acts and events described herein occurred in Pike County, Missouri.

2. Jurisdiction is conferred upon this United States District Court by 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S. C. §§ 1981, 1983,

1

and 1985(3).

3. At all times material to this action, Defendants City of Louisiana and Robert E. Embly were acting under color of State law.

4. At all relevant times described herein, Defendant Robert E. Embly was acting within the course and scope of his employment with the Louisiana Police Department.

5. Plaintiff sues defendant Robert E. Embly (hereby referred to as Defendant Embly) in his individual capacity on all counts.

## FACTS

6. Kristen E. Baker (hereafter referred to as Kristen) and her husband live in the City of Louisiana, Missouri and have been active in local politics.

7. Kristen and her husband were vocal supporters of the current mayor of defendant City of Louisiana, Tim Carter, who was running for election in April of 2022.

8. Mr. Carter, during his campaign, had expressed public concern about the inappropriate behavior and alleged abuses of power by Defendant Embly and the Louisiana Police Department.

9. In April of 2022, Defendant Embly wore a t-shirt in public in Louisiana and Bowling Green that read "Fuck Tim Carter."

10. While publicly wearing the shirt, Defendant Embly also wore his badge and gun and was driving a marked Louisiana Police Department vehicle.

11. Additionally, while wearing the shirt in public, Defendant Embly was under the supervision of and in the personal presence of then Chief of Louisiana Police, William Jones.

12. In April of 2022, Kristen publicly criticized Defendant Embly's behavior.

13. During April of 2022, there were rumors in Louisiana that, should Tim Carter win the Mayoral election, he would fire the current police force (including defendant Embly) and that Kristen's husband would be hired as the new police chief.

14. On May 7, 2022, Kristen had a verbal disagreement with her teenaged son in her home.

15. Kristen's son had been aggressive and combative over the use of Kristen and her husband's vehicle.

16. As the disagreement continued, her son suddenly claimed that he was predominantly upset about a dog that had died eleven years ago and his not being informed of the death for several days.

17. His claim about not being informed promptly of the dog's death was false.

18. Based on his volatile behavior and his claim that his mood and the conflict really stemmed from an inaccurate memory regarding a dog that died eleven years ago, Kristen and her husband reasonably believed that her son was on drugs.

19. As Kristen began to forcefully demand that her son leave her home, her son physically confronted her.

20. Kristen's son claimed that Kristen had "hit" him, and her son threatened to hit her "in self-defense."

21. Kristen's son left the home and called the police, claiming that Kristen had "hit him in the head."

22. Kristen's son had no abrasions, red marks, bruising, or any other physical evidence of an assault.

23. Defendant Embly, then working for the Louisiana Police Department, was the ranking responding officer.

24. Defendant Embly witnessed or was aware that another member of the Louisiana Police Department gave Kristen's son field sobriety tests, which he failed.

25. After speaking with Kristen's son, defendant Embly came to the home Kristen shared with her husband.

26. Defendant Embly separated Kristen and her husband so that neither person's statement would influence the other.

27. Upon information and belief, defendant Embly was aware that Kristen's son had a history of drug abuse and had seriously assaulted Kristen's husband less than two years prior.

28. Both Kristen and her husband told defendant Embly that the son had threatened minor children in the home earlier in the day, subsequently had destroyed property in the home, appeared to be on drugs, was combative, and was asked to leave the residence prior to his physically confronting his mother.

29. Both Kristen and her husband (who witnessed the interaction) told defendant Embly that Kristen did not hit her son, assault him, or commit any other crime.

30. Both Kristen and her husband informed defendant Embly that they believed the son was on drugs due to his emotional instability and combativeness that day.

31. After speaking with Kristen and her husband, Defendant Embly placed Kristen under arrest for felony domestic assault.

32. After her arrest, Kristen was taken to the Pike County Jail.

33. Despite her spouse being a well-known law enforcement officer in the area, Kristen was placed into general population with other inmates at the jail.

34. Kristen was held in jail amongst other inmates that her husband investigated or arrested.

35. When she arrived at the jail, several inmates recognized Kristen as the wife of a prominent law enforcement officer in the area.

36. The inmates that recognized her quickly told the other inmates who she was, further jeopardizing her safety.

37. Despite inmates recognizing her and immediately yelling to other inmates that an officer's wife was in the jail, she remained in general population rather than protective custody.

38. On May 8, 2022, defendant Embly submitted a sworn statement (a probable cause statement) falsely claiming that Kristen confessed that she "shove slap (sic) her son because of his attitude."

39. In his probable cause affidavit, defendant Embly also failed to include facts known to him that would have tended to negate probable cause of any crime, such as:
    a. That Kristen's son had been aggressive toward his younger siblings earlier in the day and had threatened to assault them.
    b. That Kristen's son was hostile, aggressive, and threatening Kristen and her husband during the argument.
    c. Significant evidence indicated that Kristen's son was on drugs during the encounter and when he made the accusation.
    d. That there was no physical injury or mark on Kristen's son that would correspond with being hit in the face recently.
    e. The son had previously assaulted Kristen's husband.
    f. The son had a known drug problem.
    g. That Kristen denied the accusation.
    h. That the only other witness, who was a well known and respected officer in the area, also denied the allegations and believed that the son was on drugs.

4

40. Under a totality of the circumstances, no probable cause existed to arrest Kristen.

41. Based on defendant Embly's false and misleading probable cause statement, Kristen was charged with misdemeanor domestic assault (fourth degree).

42. On July 1, 2022, the State dismissed all charges against Kristen, both because her son did not wish for her to be prosecuted and because defendant Embly never wrote a police report about the incident.

43. On July 28, 2022, defendant Embly wrote a narrative police report, roughly four weeks after the case against her was dismissed.

**Count I**
**Violation of Fourth Amendment Right to be Free from Unreasonable Search and Seizure, actionable under 42 U.S.C. § 1983**
(Defendant Embly, individual capacity)

44. Plaintiff re-asserts the allegations of paragraphs 1-43 and incorporates them herein as though fully re-stated.

45. Defendant Embly lacked probable cause or reasonable articulable suspicion that the Plaintiff had committed any crime at the time he arrested Plaintiff.

46. Defendant Embly lacked legal authority to attempt to restrain Plaintiff's movements or to jail Plaintiff.

47. By arresting Plaintiff, Defendant Embly violated Plaintiff's right to be free from unreasonable seizure by the government under the Fourth Amendment to the United States Constitution.

48. As a direct and proximate result of the illegal seizure of his person, Plaintiff suffered the following damages:

    a. Loss of liberty
    b. Humiliation
    c. Emotional distress
    d. The violation of her constitutional rights
    e. Physical pain
    f. Unjust prosecution
    g. Attorney's fees

49. Plaintiff's damages exceed $25,000.

50. Defendant Embly acted intentionally, willfully, with evil intentions and/or with conscious disregard for the rights and safety of Plaintiff.

51. Defendant Embly's conduct was outrageous.

### Count II
### Violation of Plaintiff's Right to Substantive Due Process under the Fourteenth Amendment and actionable under 42 U.S.C. § 1983
(Defendant Embly, individual capacity)

52. Plaintiff re-asserts the allegations of paragraphs 1-51 and incorporates them herein as though fully re-stated.

53. Defendant Embly deliberately fabricated evidence in that he falsely claimed that Plaintiff had "advised that in fact she did shove slap her son because of his attitude."

54. The false evidence provided by Defendant Embly was used to criminally charge and prosecute Plaintiff for misdemeanor domestic assault.

55. Defendant Embly, knowingly and/or with a reckless disregard for the truth of the allegations, provided the false evidence to prosecutors and the court through a sworn probable cause statement.

56. Defendant Embly continued with the investigation and prosecution of Kristen even though he knew that Kristen was innocent.

57. Alternatively, Defendant Embly was deliberately indifferent to Kristen's innocence.

58. The results of the investigation and the false evidence provided by Defendant Embly were used to criminally charge and prosecute the Plaintiff with misdemeanor domestic assault, to incarcerate her without justification, and to expose her to the potential of spending up to a year in jail.

59. Defendant Embly's actions described herein "shock the conscience."

60. Defendant Embly's actions described herein deprived Plaintiff of her right to Substantive Due Process under the Fourteenth Amendment to the United States Constitution.

6

61. As a direct and proximate result of Defendant Embly's violation of Plaintiff's constitutional rights, Plaintiff suffered damages as described above in paragraphs 48-49 and incorporated herein by reference.

62. Defendant Embly acted intentionally, willfully, with evil intentions and/or with conscious disregard for the rights and safety of Plaintiff.

63. Defendant Embly's conduct was outrageous.

### Count III
### Violation of Plaintiff's Fourth Amendment Right to be Free from Unreasonable Search and Seizure 42 U.S.C. § 1983, Deliberately Indifferent Hiring
(Defendant City of Louisiana, *Monell* liability)

64. Plaintiff re-asserts the allegations of paragraphs 1-63 and incorporates them herein as though fully re-stated.

65. Defendant City of Louisiana was deliberately indifferent to the hiring of defendant Embly.

66. At the time defendant City of Louisiana hired him, defendant Embly was highly likely to commit constitutional violations causing the injuries suffered by Plaintiff and described herein.

67. Defendant Embly was previously employed as a police officer by the City of Louisiana.

68. Defendant Embly left Louisiana Police Department in 2021 to become an officer in New Mexico.

69. Defendant was then re-hired by defendant City of Louisiana as a police officer prior to his actions on May, 7, 2022 that form the basis of this Complaint.

70. Upon information and belief, defendant City of Louisiana, knew or should have known of defendant Embly's having written one or more false police reports, having failed to write police reports, having used excessive force, and having made illegal and unreasonable arrests.

71. Defendant City of Louisiana had actual knowledge, or reasonably should have known, defendant Embly's pervasive, inappropriate, and illegal conduct under the color of law prior to May 7, 2022, including, but not limited to the conduct described in paragraph 70.

72. Defendant City of Louisiana should have concluded that defendant Embly's illegal and unreasonable arrest of a citizen would be a plainly obvious consequence of the decision to hire defendant Embly.

73. Defendant City of Louisiana was deliberately indifferent to the rights of persons with whom defendant Embly encountered under the color of law, including Plaintiff, in that the dangers of allowing defendant Embly to obtain the authority of law through his employment as an officer, disregarded a known or obvious result of that employment.

74. Defendant City of Louisiana's failure to prevent violations of law by its employees is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

75. As a direct and proximate result of Defendant Louisiana's violation of Plaintiff's constitutional rights, Plaintiff suffered damages as described above in paragraphs 48-49 and incorporated herein by reference.

### Count IV
### Violation of Plaintiff's Fourth Amendment Right to be Free from Unreasonable Search and Seizure 42 U.S.C. § 1983, Deliberately Indifferent Supervision/ Discipline
(Defendant City of Louisiana, *Monell* liability)

76. Plaintiff re-asserts the allegations of paragraphs 1-75 and incorporates them herein as though fully re-stated.

77. The policies of the Defendant City of Louisiana were not adequate to prevent violations of law by its employees.

78. The Defendant City of Louisiana was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its employees.

79. The failure of the Defendant City of Louisiana to prevent violations of law by its employees, failures to supervise or discipline its police officers, and defendant Embly in particular, caused the deprivation of the Plaintiff's rights by defendant Embly as described in this complaint.

80. Defendant City of Louisiana's failure to supervise and/or discipline its employees, particularly defendant Embly, is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

81. Specifically, Defendant City of Louisiana lacked sufficient policies and procedures to supervise, discipline, and/or terminate officers for unlawful, unprofessional, and/or dishonest conduct including, but not limited to, failing to write police reports, illegal arrests without probable cause, excessive force, and dishonesty.

82. Defendant City of Louisiana was aware or reasonably should have been aware of numerous incidents of the above behavior from several police officers employed by the city prior to May 7, 2022, including by defendant Embly specifically.

83. Upon information and belief, prior to May 7, 2022, defendant City of Louisiana had no supervisory system or particularized supervisory units to supervise or discipline officers.

84. Upon information and belief, to the extent that any supervisory system existed within the City of Louisiana Police Department, it relied on actions by the Chief of Police at the time, William Jones.

85. Prior to May 7, 2022, defendant City of Louisiana knew or reasonably should have known that former police chief Jones was one of the police officers willfully and repeatedly violating the rights of citizens.

86. Prior to May 7, 2022, defendant City of Louisiana was aware or reasonably should have been aware that former police chief William Jones had abandoned any attempts to supervise or discipline his subordinate officers for their violations of policy, law, and the rights of citizens.

87. Prior to May 7, 2022, defendant City of Louisiana had a de facto policy of deliberate indifference regarding the supervision and discipline of its officers.

88. With respect to police officers who had a known history of abusive and unconstitutional conduct, neither former chief Jones nor any other person, unit, or group, made any meaningful effort to take heed of civilian complaints filed or complaints publicly voiced against those officers.

89. Particularly in view of numerous complaints about defendant Embly, it was foreseeable that defendant Embly would continue to engage in misconduct.

90. Despite repeated public complaints about defendant City of Louisiana's police officers, including defendant Embly specifically, defendant City of Louisiana

       made no meaningful attempt to investigate or to forestall further incidents.

91. The disciplinary and supervisory practices of defendant City of Louisiana were contrary to the practice of most police departments.

92. The disciplinary and supervisory practices of defendant City of Louisiana were particularly dangerous because they presented an unusually high risk that constitution rights would be violated.

93. Had Defendant City of Louisiana implemented sufficient policies and procedures to supervise and discipline officers, defendant Embly would have been fired or otherwise removed from a position of authority prior to the events giving rise to this lawsuit.

94. Defendant City of Louisiana was deliberately indifferent to the rights of people with whom defendant Embly encountered, including Plaintiff, in that the dangers of allowing defendant Embly to retain the authority of law through his employment as an officer, disregarded a known or obvious result of the defendant City of Louisiana's failure to properly supervise its officers.

95. As a direct and proximate result of defendant City of Louisiana's violation of Plaintiff's constitutional rights, Plaintiff suffered damages as described above in paragraphs 48-49 and incorporated herein by reference.

**Count V**
**Violation of Plaintiff's Right to Free Speech Under the First Amendment to the United States Constitution and actionable under 42 U.S.C. § 1983, Retaliatory Arrest**
(Defendant Embly, individual capacity)

96. Plaintiff reasserts the allegations of paragraphs 1-95 and incorporates them herein as though fully re-stated.

97. Kristen's public statements and criticisms of defendant Embly and her public support of a political candidate opposed by defendant Embly were substantial motivating forces behind defendant Embly's decision to illegally arrest Plaintiff.

98. Kristen's statements criticizing defendant Embly and her public support of a mayoral candidate were protected speech under the First Amendment to the United States Constitution.

99. As a direct and proximate result of Defendant Embly's violation of Plaintiff's

constitutional rights, Plaintiff suffered damages as described above in paragraphs 48-49 and incorporated herein by reference.

100. Defendant Embly acted intentionally, willfully, with evil intentions and/or with conscious disregard for the rights and safety of Plaintiff.

101. Defendant Embly's conduct was outrageous.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and reasonable amount, for court costs, attorney's fees pursuant to 42 U.S.C. § 1988, and for all other such orders as are fair and reasonable and for damages for aggravating circumstances or punitive damages in such sums that will serve to punish Defendant Embly appropriately and that will deter others from similar behavior.

/s/ John D. James
John D. James, #61070(MO)
14 Richmond Center Court
St. Peters, Missouri 63376
(636) 397-2411 Fax: (636) 397-2799
cjlaw@charliejames.com
john@charliejames.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2025, I electronically filed the foregoing with the Clerk of the Court and that an electronic notice of filing and a copy of the foregoing will automatically be sent to all counsel of record.

/s/ John D. James